IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUIS EMILIO CORDIN LINAREZ,** | : | CIVIL NO. 3:24-CV-488 |
| | : | |
| Petitioner, | : | (Judge Saporito) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **MERRICK GARLAND, et al.,** | : | |
| | : | |
| Respondents. | : | |

### REPORT AND RECOMMENDATION

I.  **Introduction**

In some respects, the instant petition for writ of habeas corpus is a case searching for a controversy. The petitioner, Luis Emilio Cordin Linarez, who is currently serving a sentence for drug trafficking at the Federal Correctional Institution at Allenwood, will complete his sentence on November 7, 2024, and, thereafter, states that he wishes to immediately return to his native Guatemala. The government agrees that Linarez should be returned to Guatemala as soon as possible following his release and towards that end has issued an order for his expedited removal. Thus, both parties agree that the petitioner must return to Guatemala but simply disagree as to the manner in which he should be returned.

For his part, the petitioner argues he cannot be subject to expedited removal because he was paroled into the United States upon his extradition and because the treaty which governs his extradition allows him to return to Guatemala voluntarily

1

after completing his sentence. Notwithstanding the petitioner's thoroughly researched and briefed position on this issue, in our view, this petition for habeas corpus falters of a single threshold procedural flaw: it is well settled that district courts lack subject matter jurisdiction over the review of expedited removal orders. These clear and specific jurisdictional bars preserve habeas corpus review for only a small subset of issues relating to individual expedited removal orders, 8 U.S.C. § 1252(e), none of which apply in this case, and strip the district court of jurisdiction to "to hear any [other] cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). For this reason, as explained below, we recommend the Court dismiss this petition for writ of habeas corpus for lack of subject matter jurisdiction.

## II.    Factual Background

The pertinent facts can be simply stated: the petitioner, Luis Emilio Cordon Linarez is a native and citizen of Guatemala. (Doc. 1, ¶ 2). He was extradited from Guatemala to the United States on December 15, 2020, to face prosecution for conspiracy to distribute five kilograms or more of cocaine and is currently serving his sentence at the Federal Correctional Institution Allenwood (Allenwood). (Id., ¶¶ 2-5). Linarez was convicted of this drug trafficking offense and was originally sentenced to 108 months imprisonment, but on January 24, 2024, the trial court

reduced his sentence to 72 months. (Id., ¶¶ 5, 9). On August 7, 2023, the Department of Homeland Security (DHS) issued an expedited order of removal against Linarez. (Id., ¶ 7). Linarez alleges that he earned 444 time credits under the First Step Act[1] (FSA) prior to the issuance of this expedited removal order, but that Allenwood refused to apply these credits upon request by the petitioner due to the removal order. (Id., ¶¶ 10-11). The petitioner states that the refusal to apply his FSA credits has extended his incarceration by one year, with his anticipated release date now being November 7, 2024. (Id., ¶ 12).

On March 20, 2024, Linarez filed the instant petition for writ of habeas corpus, arguing that DHS misapplied the expedited removal statute, 8 U.S.C. § 1225(b), to his case because he does not fall within the scope of removable noncitizens subject to expedited removal. (Doc. 1). Specifically, he argues that he is not removable because he was paroled into the country when he was extradited to the United States. He also challenges the timing of the expedited removal order, arguing that he could not be ordered removed in this manner after being physically present in the United States for more than two years. According to Linarez, the erroneous application of

---

[1] The First Step Act provides that eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. FIRST STEP ACT OF 2018, PL 155-391, December 21, 2018, 132 Stat 5194. The Act excludes inmates who are subject to final removal orders from these sentence credits benefits.

this provision to the petitioner resulted in his prolonged incarceration, due to the refusal of Allenwood to apply his FSA credits.[2] Moreover, although both Linarez and the government agree he should return to Guatemala, Linarez argues he should be free to voluntarily return following the completion of his sentence and should not be subjected to expedited removal.

The government responded to Linarez's petition on April 12, 2024. (Doc. 10). On June 27, 2024, the petitioner filed a motion to expedite consideration of this petition and, on July 29, 2024, this Court, Saporito, C.M.J., presided over oral arguments. (Doc. 24). The Court then ordered supplemental briefing on the issues, ordering the parties to submit conclusions of law and supporting briefs by August 12, 2024. (Doc. 21). The Court now has the benefit of multiple rounds of briefing by the parties, (Docs. 1, 10, 13, 25, 28, 29, 30), as well as the transcript of the oral argument. Despite the impressive and expansive arguments on the merits made by both sides, we find that our review of this petition is constrained by insurmountable

---

[2] The government argues that the Federal Bureau of Prisons (BOP) properly deemed Linarez ineligible for application of his FSA credits because prisoners subject to a final order of removal are ineligible to have time credits applied under Subsection 3632(d)(4)(E) of Title 18. The government also argues that Linarez failed to exhaust his administrative remedies by failing to follow the appropriate BOP procedure to challenge the refusal to apply these credits. Although we need not address the exhaustion issue in detail since we find we do not have jurisdiction over the expedited removal order, we simply note that Linarez challenges the removal order itself, not the BOP's application of the governing FSA statute. Thus, we are skeptical that any grievance filed with BOP would have adequately addressed this issue.

jurisdictional issues. Thus, we recommend the Court dismiss this petition for lack of subject matter jurisdiction.

## II. Discussion

### A. This Court Lacks Jurisdiction to Review the Claims Alleged in Linarez's Petition.

Linarez asks the Court to find that ICE improperly placed him in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b) despite him not meeting the criteria for expedited removal. This contention necessarily invites the Court to address the ultimate merits of any expedited removal order. The petitioner, as the party asserting jurisdiction, bears the burden of proving jurisdiction exists. Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 293 (3d Cir. 2012). Linarez has asked this Court to review his challenge using a petition for habeas corpus, but, at the outset, we note that a district court's jurisdiction over immigration matters is limited in this context. As the Supreme Court has pointed out, "[h]abeas is at its core a remedy for unlawful executive detention and . . . [c]laims so far outside the core of habeas may not be pursued through habeas." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 119, 140 S. Ct. 1959, 1970–71, 207 L. Ed. 2d 427 (2020) (citing Munaf v. Geren, 553 U.S. 674 (2008); Skinner v. Switzer, 562 U.S. 521, 535, n. 13, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011)) (internal quotation omitted).

Indeed, the intent of Congress is clear that judicial review of removal orders is extremely limited. The Third Circuit has aptly summarized the statutory framework which governs our review in this case:

> Section 1252 of Title 8 defines the scope of judicial review for all orders of removal. This statute narrowly circumscribes judicial review for expedited removal orders issued pursuant to § 1225(b)(1). It provides that "no court shall have jurisdiction to review ... the application of [§ 1225(b)(1)] to individual aliens, including the [credible fear] determination made under [§ 1225(b)(1)(B) ]." 8 U.S.C. § 1252(a)(2)(A)(iii). Moreover, except as provided in § 1252(e), the statute strips courts of jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal regime; and (3) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1) ]." Id. § 1252(a)(2)(A)(i), (ii) & (iv). Thus, the statute makes abundantly clear that whatever jurisdiction courts have to review issues relating to expedited removal orders arises under § 1252(e).
>
> Section 1252(e), for its part, preserves judicial review for only a small subset of issues relating to individual expedited removal orders:
>
>> Judicial review of any determination made under [§ 1225(b)(1) ] is available in habeas corpus proceedings, but shall be limited to determinations of—
>>
>> (A) whether the petitioner is an alien,
>> (B) whether the petitioner was ordered removed under [§ 1225(b)(1) ], and
>> (C) whether the petitioner can prove ... that the petitioner is [a lawful permanent resident], has been admitted as a refugee ... or has been granted asylum ....
>
> Id. § 1252(e)(2). In reviewing a determination under subpart (B) above—i.e., in deciding "whether the petitioner was ordered removed under [§ 1225(b)(1) ]"—"the court's inquiry shall be limited to whether

> such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." Id. § 1252(e)(5).
>
> Section 1252(e) also provides jurisdiction to the district court for the District of Columbia to review "[c]hallenges [to the] validity of the [expedited removal] system." Id. § 1252(e)(3)(A). Such systemic challenges include challenges to the constitutionality of any provision of the expedited removal statute or its implementing regulations, as well as challenges claiming that a given regulation is inconsistent with law. See id. § 1252(e)(3)(A)(i) & (ii). Nevertheless, systemic challenges must be brought within sixty days after implementation of the challenged statute or regulation. Id. § 1252(e)(3)(B); see also Am. Immigration Lawyers Ass'n v. Reno, 18 F.Supp.2d 38, 47 (D.D.C. 1998), aff'd, 199 F.3d 1352 (D.C. Cir. 2000) (holding that "the 60–day requirement is jurisdictional rather than a traditional limitations period")

Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 426–27 (3d Cir. 2016).

Indeed, the Third Circuit addressed this precise issue in determining whether a district court had jurisdiction to review the issuance of an expedited removal order in Castro,[3] where it reviewed a district court's holding that it lacked subject matter

---

[3] We acknowledge that the immigration status of the petitioners in Castro was distinct from Linarez's in that they were recent arrivals ordered expeditiously removed after being apprehended within close proximity to the border shortly after their illegal crossing and the court found they "clearly [fell] within the class of aliens to whom the expedited removal statute applies." 835 F.3d at 427-28. The noncitizens in Castro were challenging the soundness of DHS's negative credible fear determinations. Id. at 428. Nonetheless, the court's jurisdictional analysis in Castro is equally applicable here.

7

to review the soundness of credible fear interviews conducted by DHS in the petitioners' expedited removal proceedings. The Third Circuit confirmed that:

> § 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute. See 8 U.S.C. § 1252(a)(2)(A). And under subsection (e), unless the petitioner wishes to challenge the "validity of the system" as a whole rather than as applied to her, the district courts' jurisdiction is limited to three narrow issues. See id. § 1252(e)(2) & (3).

Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 430 (3d Cir. 2016). These issues, as defined by §1252(e) are whether the petitioner is an alien, whether the petitioner was ordered removed, and whether the petitioner can prove he is a lawful permanent resident, refugee, or asylee. Id.

The petitioner does not ask this Court to review any of these issues. Rather, the petitioner argues that § 1252(e), which limits our review to these narrow, carefully defined, issues, simply does not apply in this case because the Attorney General does not have the authority to issue an expedited removal order against him. However, as Castro makes clear, the only authority we possess to review *any* claim related to an expedited removal order exists under this statute.

Moreover, to the extent that Linarez asks the Court to find that he was not subject to expedited removal because he was paroled into the country and is, therefore, not inadmissible, it is well-settled that, in determining whether there is a valid expedited removal order, " the court's inquiry shall be limited to whether such

8

an order in fact was issued and whether it relates to the petitioner," and "[t]here shall be no review of whether the alien is actually admissible." Id. at 427.[4]

Having found that Linarez's claim is not one of the narrowly defined issues over which the habeas corpus provision of the statute provides district court review, our ability to review this petition is further constrained by the explicit instruction of § 1252(g), which states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Linarez argues that § 1252(g) does not bar us from reviewing this petition because he is not challenging any discretionary action, but that this is a legal question of statutory interpretation in that he challenges whether INA § 235(b)(1) should have been applied to him. However, in our view, the Attorney General's discretionary decision to place Linarez in expedited removal proceedings is precisely the action this statute refers to when it states: "no court shall have jurisdiction to hear any cause

---

[4] Linarez's argument that the Suspension Clause guarantees habeas corpus review in this case also fails, since the Supreme Court has held that neither the INA, the Suspension Clause, nor the Due Process Clause of the United States Constitution afford a noncitizen the right to substantive judicial review of an expedited removal order. See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020).

9

or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." In an effort to avoid this second jurisdictional bar to the exercise of habeas corpus jurisdiction over the merits of his expedited removal claims, the petitioner has pointed us to caselaw which demonstrates that § 1252(g) does not necessarily bar district court review of all issues in a deportation case. However, none of the exceptions to § 1252(g)'s jurisdictional bar convinces us that the action Linarez attempt to challenge falls outside the scope of § 1252(g).

> For example, in Reno, the Supreme Court held that § 1252(g):
>
> [A]pplies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482, 119 S. Ct. 936, 943, 142 L. Ed. 2d 940 (1999). However, the Supreme Court in Reno found that the petitioners, who claimed they had been targeted for deportation because of their affiliation with a politically unpopular group, challenged the Attorney General's decision to "commence proceedings" against them, an action that fell squarely within the application of § 1252(g). Id. at 945. Similarly, here, the decision of the

10

government to place Linarez in expedited removal proceedings is clearly a decision to "commence proceedings" against him. Thus, although the petitioner is correct that § 1252(g) does not in a sweeping manner bar judicial review in all actions relating to the deportation process, the specific action in this case—the commencement of removal proceedings—fits squarely within the types of actions which we are barred from reviewing under this section.

Simply put, a petition for habeas corpus in the district court is not the appropriate avenue to pursue the relief sought by the petitioner in this case. Despite Linarez's attempts to remove his claim from the purview of the specific and clearly defined jurisdiction stripping immigration statutes enacted by Congress, at base, he asks this Court to review DHS's decision to commence expedited removal proceedings against him. This we may not do.[5] Indeed, while we acknowledge the petitioner's urgency in seeking a prompt resolution of this matter prior to his release,

---

[5] The parties have spilled much ink on the merits of whether Linarez is in fact subject to expedited removal under 8 U.S.C. § 1225(b). Although we do not reach the issue which falls beyond our jurisdiction, we note the claim seems itself seems legally and factually dubious. At bottom, Linarez insists that the INA should be construed to provide that a criminal noncitizen indicted in the United States who was brought against his will through legal compulsion to the United States by extradition as a matter of law must be released to voluntarily depart this country. It strains credulity to read the INA as reflecting a Congressional intent to confer this type of highly favorable status upon extradited criminal noncitizens. Indeed, as the government points out, it appears Congress intended to remedy this counterintuitive proposition through statute, specifically INA § 235(a)(1) which deems such noncitizens "applicants for admission." (Doc. 10, at 13-17).

something that may be rare in the immigration system, the resolution he seeks in this case, the vacating or reconsideration of his expedited removal order, is an action that rests beyond our jurisdiction. As the Supreme Court has noted, "[d]epartment officials and immigration judges may reopen cases or reconsider decisions, see 8 C.F.R. §§ 103.5(a)(1), (5), and 1003.23(b)(1), and the Executive always has discretion not to remove." Thuraissigiam, 591 U.S. 103, 140 n.28 (citing 8 C.F.R. §§ 103.5(a)(1), (5), and 1003.23(b)(1); Reno, 525 U.S. at 483–484). Accordingly, we recommend the Court dismiss the petition for habeas corpus for lack of subject matter jurisdiction.

## III.  Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the district court DISMISS the petition.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new

hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of September 2024.

/S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge