## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LUIS EMILIO CORDÓN-LINAREZ,
BOP # 21116-104,

      Petitioner,

      v.

MERRICK GARLAND, U.S.
Attorney General, et al.,

      Respondents.

CIVIL ACTION NO. 3:24-cv-00488

(SAPORITO, J.)

## MEMORANDUM

Now before the court is a report and recommendation of United States Magistrate Judge Martin C. Carlson, in which he recommends that this habeas petition be dismissed for lack of subject matter jurisdiction. Doc. 34.

The petitioner in this § 2241 habeas action, Luis Emilio Cordón Linarez, is a convicted federal prisoner, currently incarcerated at FCI Allenwood Low in the custody of the Federal Bureau of Prisons ("BOP"). His habeas petition involves both federal criminal statutes and federal immigration statutes.

Cordón Linarez is a native and citizen of Guatemala. He was originally indicted on drug conspiracy charges in January 2019. *See*

*United States v. Cordón Linarez*, No. 19-cv-20060 (S.D. Fla. filed Jan. 31, 2019). He was declared a fugitive shortly thereafter. In September 2019, he was arrested and incarcerated in Guatemala. On December 15, 2020, he was extradited to the United States, where he entered at the Fort Lauderdale, Florida, port of entry and was paroled into the country for prosecution under the "significant public benefit" provision of the Immigration and Naturalization Act ("INA") § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).

On May 10, 2021, Cordón Linarez pleaded guilty pursuant to a negotiated plea agreement. On July 21, 2021, he was sentenced to serve a term of 108 months in prison, with an anticipated release date of September 27, 2028.

On August 7, 2023, the Department of Homeland Security ("DHS") issued an expedited order of removal with respect to Cordón Linarez, pursuant to INA § 235(b)(1), 8 U.S.C. § 1225(b)(1). The expected effect of this removal order is that Cordón Linarez will be deported to Guatemala immediately upon his release from BOP custody.[1]

---

[1] The petitioner alludes to various procedural defects in the expedited removal process. He claims that the removal order was served

*(continued on next page)*

On January 23, 2024, the sentencing court granted a Rule 35(b) motion and reduced Cordón Linarez's sentence to 72 months of incarceration. His current anticipated release date is November 7, 2024.

Prior to the issuance of the expedited order of removal, however, Cordón Linarez accrued 444 FSA time credits.[2] But an inmate subject to a final order of removal is not eligible to receive or use FSA time credits. Based on his balance of earned FSA time credits, Cordón Linarez claims that, but for an allegedly invalid final order of removal, he was entitled to be released from BOP custody on November 7, 2023.

---

without a translation, and that he is entitled to but was not afforded an opportunity to voluntarily depart prior to issuance of the removal order. These procedural challenges to the removal order itself, however, are beyond the jurisdiction of this federal habeas court.

[2] On December 21, 2018, the First Step Act ("FSA") was signed into law. Among other provisions, the FSA sought to incentivize federal inmates to participate in programs that had been demonstrated to reduce recidivism. Under the FSA, the BOP is required to provide incentives to prisoners who participate in and complete "evidence-based recidivism reduction programs," including phone and visitation privileges, transfer to a prison closer to home, and other rewards. *See* 18 U.S.C. § 3632(d); *see also id.* § 3635(3) (defining "evidence-based recidivism reduction program"). Of significance here, these incentives include the award of "FSA time credits" to eligible prisoners who successfully complete evidence-based recidivism reduction programs or various "productive activities." *See id.* § 3632(d)(4); *see also id.* § 3635(5) (defining "productive activity"). These FSA time credits may be applied to earn early (up to 12 months) placement in prerelease custody or transfer to supervised release—effectively an early release for a prisoner facing deportation.

In other words, Cordón Linarez claims that DHS's August 2023 expedited order of removal is invalid, as a result of which BOP's determination that he is ineligible for application of FSA time credits is invalid, as a result of which he is currently being held in BOP custody without a legal basis.

The respondent has pointed to a jurisdiction-stripping statute, arguing that this federal district court lacks jurisdiction to address the petitioner's primary claim that his expedited removal order is procedurally defective and thus invalid. "District courts . . . lack jurisdiction to review most claims that even relate to removal." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020). Generally, the *exclusive* means for review of a final order of removal is a petition for judicial review filed with the appropriate court of appeals. *See* INA § 242(a)(5), 8 U.S.C. § 1252(a)(5). Another subsection of the same statute, however, contains a jurisdiction-stripping provision, removing jurisdiction from the courts of appeal with respect to judicial review of expedited "removal orders. The statute provides that "[w]ithout regard to the nature of the action or claim . . . , *no court* may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order

to exclude an alien in accordance with [INA § 235(b)(1), 8 U.S.C. § 1225(b)(1)] except as specifically authorized in a subsequent paragraph of this subsection." INA § 242(e)(1)(A), 8 U.S.C. § 1252(e)(1)(A) (emphasis added). The statute then provides that such expedited removal orders are subject to habeas review in the district courts, but expressly limited to three enumerated issues: (1) whether the petitioner is in fact an alien; (2) whether the petitioner was in fact ordered removed under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1); and (3) whether the petitioner is in fact an alien lawfully admitted for permanent residence, as a refugee, or as an asylee. *See* INA § 242(e)(2), 8 U.S.C. § 1252(e)(2). The statute also provides an avenue for "challenges to the validity of the system," permitting judicial review of expedited removal orders by actions filed in the United States District Court for the District of Columbia, but expressly limited to two enumerated issues: (1) whether the expedited removal statute, INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), or any implementing regulation is constitutional; and (2) whether any implementing regulation, written policy directive, written policy guideline, or written procedure is inconsistent with federal immigration statutes or otherwise in violation of law. *See* INA § 242(e)(3), 8 U.S.C.

§ 1252(e)(3). Moreover, any such challenge to the validity of the system is subject to a 60-day statute of limitations. *See* INA § 242(e)(3)(B), 8 U.S.C. § 1252(e)(3)(B) ("Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guidance, guideline, or procedure . . . is first implemented."). The statute further provides that, "[i]n determining whether an alien has been ordered removed under [INA § 235(b)(1), 8 U.S.C. § 1225(b)(1)], the court's inquiry shall be limited to whether such an order was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." INA § 242(e)(5), 8 U.S.C. § 1252(e)(5).

Thus, the respondent has argued that, under INA § 242(e), 8 U.S.C. § 1252(e), this federal district court lacks a statutory basis to exercise jurisdiction with respect to the validity of Cordón Linarez's August 2023 expedited removal order, as the petitioner's habeas claims do not fall within any of the three enumerated categories over which this federal district court may exercise habeas jurisdiction. *See generally Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 162–66 (3d Cir. 2018); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 429–34 (3d Cir. 2016).

After multiple rounds of briefing and a motion hearing at which the court received oral argument from both parties, Judge Carlson concluded that the petition was "constrained by insurmountable jurisdictional issues," and thus he recommended that the petition be dismissed for lack of subject matter jurisdiction.

In particular, Judge Carlson relied on the Third Circuit's opinion in *Castro*, explaining that

> [INA § 242, 8 U.S.C. § 1252,] makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists *only* under subsection (e) of the statute. And under subsection (e), unless the petitioner wishes to challenge the "validity of the system" as a whole rather than as applied to her, the district courts' jurisdiction is limited to three narrow issues.

R. & R. 8, Doc. 34 (quoting *Castro*, 835 F.3d at 430) (emphasis added). Judge Carlson then noted that Cordón Linarez "does not ask this Court to review *any* of these issues." *Id.* (emphasis added).

Judge Carlson further noted that the scope of this court's review was further constrained by an additional proscription set forth in subsection (g) of the same statute:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas

corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* at 9 (quoting INA § 242(g), 8 U.S.C. § 1252(g)). Judge Carlson considered and expressly rejected the petitioner's arguments that subsection (g) did not apply to his habeas claims. *See id.* at 9–11.

In the margin of his report, Judge Carlson also considered and rejected an argument by Cordón Linarez's that this federal district court may nevertheless properly exercise habeas jurisdiction pursuant to the Suspension Clause of the United States Constitution, noting that the Supreme Court of the United States has held that there is no statutory or constitutional right to substantive judicial review of an expedited removal order. *See id.* at 9 n.4 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020)). *See generally* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

The petitioner has timely filed objections to Judge Carlson's report and recommendation. Doc. 35. The respondent has filed a brief in

opposition to the objections, Doc. 37, and the petitioner has filed a reply brief, Doc. 38. We have conducted a de novo review of the contested portions of the report, as addressed seriatim below. *See* 28 U.S.C. § 636(b)(1); *United States v. McLaughlin*, 607 F. Supp. 3d 522, 529 (M.D. Pa. 2022).

In his first objection, the petitioner argues that the magistrate judge misapplied *Castro* and INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), in this case. The petitioner attempts to distinguish himself from the aliens in *Castro*, noting that the *Castro* aliens were apprehended near the border shortly after they had illegally entered the United States without entry documents, and thus they "clearly [fell] within the class of aliens to whom the expedited removal statute applies." Obj. 3, Doc. 35.[3] By contrast, Cordón Linarez was extradited pursuant to the U.S.-Guatemala Extradition Treaty, he was paroled into the country for criminal

---

[3] We note that, in support of this point, the petitioner's objection includes a four-line block quote attributed to the Third Circuit's *Castro* decision. *See* Obj. 3 (citing *Castro*, 835 F.3d at 427–28). While this putative quotation may not misrepresent the *substance* of the cited passage in the *Castro* opinion, it is not an actual quotation from the Third Circuit's decision. We are unable to locate any passage in *Castro* that uses the language presented here as a quotation, nor are we able to locate it in any other such federal case law available on Westlaw.

prosecution, and he resided in the country (specifically, in federal prison) for two years before the expedited removal order issued. Based on the these facts, Cordón Linarez argues that he had lawfully entered the United States, and therefore he is not the sort of inadmissible alien to whom the expedited removal statute, INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), applies. But this challenge asks the court to review the validity of the expedited removal order, which we simply lack jurisdiction to do. As discussed above, the court's jurisdiction to review such an order is strictly limited to three enumerated issues, none of which are raised in this petition. *See* INA § 242(e)(2), 8 U.S.C. § 1252(e)(2).[4] Therefore, we

---

[4] Cordón Linarez's argument that he was lawfully admitted when he was paroled into the United States for prosecution, and thus he is not an inadmissible alien subject to expedited removal is the linchpin of his entire petition. Although we do not decide the validity of the expedited removal order or the predicate finding that Cordón Linarez is an inadmissible alien subject to expedited removal, as we lack jurisdiction to do so, Judge Carlson characterized this claim that Cordón Linarez was not an inadmissible alien as one that "strains credulity." R. & R. 11 n.5. We agree, and we note that, under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), such parole "amounts to permission by the Attorney General for ingress into the country but is not a formal 'admission.'" *Ngo v. I.N.S.*, 192 F.3d 390, 392 n.1 (3d Cir. 1999). As this court has previously recognized in the even more compelling context of a paroled Cuban who had resided in the United States for 22 years after arriving in the Mariel Boatlift, the petitioner here "now stands, although physically well within the United States border, on the same legal footing as an immigrant at

*(continued on next page)*

find this first objection to be meritless.

In his second objection, the petitioner argues that, even if INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), and INA § 242(e), 8 U.S.C. § 1252(e), do apply, the Supreme Court's decisions in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), and *Boumediene v. Bush*, 553 U.S. 723 (2008), establish that this court retains jurisdiction over pure legal and constitutional claims, pursuant to the Suspension Clause.[5]

In *St. Cyr*, the Supreme Court reaffirmed that the common-law habeas writ "provided a vehicle to challenge all manner of detention by government officials" and "could be invoked by aliens already in the country who were held in custody pending deportation." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 137–38 (2020). Contrary to the petitioner's overbroad reading of *St. Cyr*, the Supreme Court held

---

the door seeking admission to the United States." *Soto-Ramirez v. Ashcroft*, 228 F. Supp. 2d 566, 569–70 (M.D. Pa. 2002). The petitioner's extradition, his discretionary parole into the United States for criminal prosecution, and his criminal incarceration for a period of years all appear to be distinctions without a difference, leaving him on the same legal footing as the similarly inadmissible aliens in *Castro* and *Thuraissigiam*.

[5] Although the petitioner does not refer to the Suspension Clause in this particular objection, that is the constitutional provision at issue in both *St. Cyr* and *Boumediene*.

that, in the absence of "a clear statement of congressional intent to repeal habeas jurisdiction," *St. Cyr*, 533 U.S. at 298, the pre-1996 immigration statutory scheme, "although purporting to eliminate district court review of final orders of removal, did not eliminate district court review *via habeas corpus* of constitutional or legal challenges to final orders of removal." *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (emphasis in original). In response to the *St. Cyr* decision, Congress moved to remedy this lack of a clear statement of congressional intent to repeal habeas jurisdiction, enacting the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 106, 119 Stat. 231, 302, 310–11, to clarify that final orders of removal—including expedited removal orders—may not be reviewed in district courts, even via habeas corpus, except for the three enumerated issues identified in INA § 242(e)(2), 8 U.S.C. § 1252(e)(2). *See Nasrallah*, 590 U.S. at 580–81. As previously noted, the petitioner's habeas claims do not fall within any of the three enumerated categories over which this federal district court may exercise habeas jurisdiction, and in light of the clear statement of congressional intent to preclude this court's broader exercise of habeas jurisdiction with respect to expedited orders of removal, the petitioner's reliance on *St. Cyr* is unpersuasive. *See*

*Thuraissigiam*, 591 U.S. at 137–38.

In *Boumediene*, the Supreme Court considered whether suspected foreign terrorists could use the writ of habeas corpus to challenge their detention at a naval base in Guantanamo Bay, Cuba. The *Boumediene* petitioners, however, sought only their release from captivity at Guantanamo Bay; they did not seek entry into the United States. *See Thuraissigiam*, 591 U.S. at 136–37. Although the Supreme Court concluded that the *Boumediene* petitioners enjoyed the privilege of the writ to challenge their continued detention at Guantanamo, that privilege extended only to the narrow remedy of release from detention. *Boumediene* did not concern immigration at all, it did not recognize habeas as a means of gaining entry to the United States, and it did not recognize a right to use habeas to obtain judicial review of final order of removal. *See id.* As with the petitioner in *Thuraissigiam*, we find *Boumediene* inapposite to this petitioner's habeas claims. *See id.*; *Castro*, 835 F.3d at 445 (noting that "the Supreme Court has unequivocally concluded that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application'") (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)); *see*

*also supra* note 4.

Therefore, we find the petitioner's second objection to be meritless.

In his third objection, the petitioner argues that the magistrate judge and the respondent have simply ignored his argument that the U.S.-Guatemala Extradition Treaty conferred upon him a legal right to *voluntarily* return to Guatemala after serving his criminal sentence, as opposed to being involuntarily removed to Guatemala pursuant to an expedited removal order. He contends that Article III of the treaty confers upon an extradited person a right to a period of one month after his discharge, release, or pardon to move about freely within the United States before voluntarily returning to Guatemala, and that the expedited removal order is invalid because it requires his transfer directly into immigration custody upon his release from prison for civil detention and involuntary removal to Guatemala. *See* Treaty for the Mutual Extradition of Fugitives from Justice, Guat.-U.S., art. III, Feb. 27, 1903, 33 Stat. 2147; *see also* Supplementary Extradition Convention, Guat.-U.S., Feb. 20, 1940, 55 Stat. 1097. As with his first objection, this challenge asks the court to review the validity of the expedited removal

order, which we simply lack jurisdiction to do.[6] *See, e.g.*, *Agrawal v. Mayorkas*, No. 4:21cv346, 2021 WL 4994618, at \*4 (N.D. Fla. Sept. 17, 2021), *R. & R. adopted*, 2021 WL 4990823 (N.D. Fla. Oct. 27, 2021).

---

[6] Although we do not decide the issue, we note that Cordón Linarez's argument on this point appears to misread the relevant provision of the Treaty. Read closely, Article III appears to be a "rule of specialty" providing that the person extradited under a treaty "can only be tried for one of the offenses described in that treaty, and for the offense with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from [which] he had been forcibly taken under those proceedings." *United States v. Rauscher*, 119 U.S. 407, 430 (1886); *see also United States v. Riviere*, 924 F.2d 1289, 1297 (3d Cir. 1991) (discussing a similar express rule of specialty contained in a U.K.-U.S. extradition treaty). Article III appears to preclude prosecution or incarceration of an extradited person for any *other* criminal charge unless he has first returned to the country from which he was extradited, or he has had an opportunity to voluntarily return to that country for a fixed period of one month following his discharge, release, or pardon. It does not appear to confer upon an extradited person a free-standing right to be permitted to voluntarily return to his country of origin rather than be removed. *See Abbas v. Dep't of Homeland Sec.*, No. 09-0169, 2009 WL 2512844, at \*6 (W.D. La. Aug. 17, 2009) ("The undersigned finds no merit in petitioner's argument that the Treaty requires that he be given twenty days of complete freedom in this country, purportedly to shop at Walmart."); *Quezadaruiz v. Nash*, No. 04-2081, 2005 WL 1398503, at \*7 (D.N.J. June 14, 2005) ("[T]he rule of specialty does not authorize a defendant to remain in the United States . . . following a term of imprisonment."). It also does not appear to apply to civil immigration detention, which is not intended for the purpose of criminal prosecution or punishment, but for the purpose of returning the extradited person to his country of origin. *See Abbas*, 2009 WL 2512844, at \*5–6 ("[T]he rule of specialty has no applicability in the context of a civil proceeding.").

Therefore, we find this third objection to be meritless as well.

In his fourth objection, the petitioner argues that the magistrate judge erred in finding that INA § 242(g), 8 U.S.C. § 1252(g), applied to bar judicial review of the Attorney General's decision to commence expedited removal proceedings against Cordón Linarez. Pointing to a line in *Tazu v. Attorney General United States*, 975 F.3d 292 (3d Cir. 2020), in which the Third Circuit noted that, "unless the Attorney General first has authority under the Immigration and Nationality Act to remove an alien, [INA § 242(g), 8 U.S.C. § 1252(g)] cannot shield the Attorney General's discretionary use of that authority," *id.* at 297, the petitioner contends that he challenges the Attorney General's *authority* to commence expedited removal proceedings against Cordón Linarez, not the exercise of the Attorney General's *discretion* to do so. But as we have similarly concluded with respect to the petitioner's first and third objections, and just as the Third Circuit found in *Tazu*, this district court simply lacks jurisdiction to address the petitioner's claim that the expedited removal order was invalid because Cordón Linarez was not an

inadmissible alien subject to expedited removal.[7] *See Tazu*, 975 F.3d at 298 (holding that district court below lacked subject-matter jurisdiction to consider a habeas petitioner's claims, and noting that the appropriate court of appeals could consider the claims as part of a petition for review); *cf. Patel v. Barr*, 475 F. Supp. 3d 422, 428 (E.D. Pa. 2020) (dismissing complaint under Administrative Procedures Act challenging agency determination that plaintiffs were ineligible for asylum, upon which expedited removal order was premised, for lack of subject matter jurisdiction). Therefore, we find this fourth objection to be meritless.

The petitioner's fifth objection is not entirely clear. He appears to preemptively complain that this court has failed to afford him de novo review of those portions of the report and recommendation to which he has objected. He also argues that this court must interpret the expedited removal statute, INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), de novo. As to the first part of this objection, we have indeed conducted the requisite de novo review, as set forth in this memorandum opinion. As to the second part of this objection, for the reasons articulated above, this court simply lacks

---

[7] The premise of this argument by the petitioner—that he was lawfully admitted and not an inadmissible alien by virtue of his extradition and parole—appears to have little merit. *See supra* note 4.

jurisdiction to interpret the statute in the context of Cordón Linarez's expedited removal order. Therefore, we find this fifth objection to be meritless.

In his sixth objection, the petitioner argues that the delayed adjudication of this habeas action has itself violated his due process rights. Cordón Linarez commenced the action by filing his petition on March 20, 2024, nearly two years after an immigration detainer was first lodged against him, and nearly seven months after the expedited removal order was served on him. The habeas petition was served on the respondent two days after it was filed, on March 22, 2024. The respondent filed his response to the petition three weeks later on April 12, 2024. Cordón Linarez filed his reply two weeks later on April 26, 2024. Cordón Linarez filed a motion to expedite on June 27, 2024. A hearing on the petition was held on July 29, 2024. Following additional briefing, the magistrate judge's report and recommendation was issued on September 24, 2024. The petitioner filed his objections to the report and recommendation thirteen days later, on October 7, 2024. The respondent filed his brief in opposition to the objections two weeks later, on October 21, 2024. The petitioner filed his reply in support on the next day, October

22, 2024. Now, ten days later, we enter this memorandum opinion and accompanying order disposing of the petition "as law and justice require." 28 U.S.C. § 2243. Altogether, from filing to disposition, this petition has been pending before the court for approximately seven months.[8] Under these circumstances, we find no unreasonable delay, and in light of the denial of habeas relief, we find no prejudice to the petitioner. Therefore, we find this sixth objection to be meritless.

In his seventh objection, the petitioner has returned to the Suspension Clause, arguing that his situation can be distinguished from that of the petitioner in *Thuraissigiam*—an alien apprehended within 25 yards of the border—and, thus, under *Boumediene*, "[t]he Suspension Clause requires meaningful habeas review, especially where no alternative remedy exists." Obj. 10 (quoting *Boumediene*, 553 U.S. at 779). Because the jurisdiction-stripping statute precludes circuit court review of his expedited removal order, Cordón Linarez contends that the Suspension Clause compels this court to consider his challenge to the expedited removal order on habeas review.

---

[8] We note that the median time from filing to disposition of a civil case in this court is 9.1 months.

But, as the Third Circuit has explained:

> *Boumediene* contemplates a two-step inquiry whereby courts must first determine whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention. Only after confirming that the petitioner is not so prohibited may courts then turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal).

*Castro*, 835 F.3d at 445 (citing *Boumediene*, 553 U.S. at 739) (citation omitted). As in *Castro* and *Thuraissigiam*, the petitioner in this case, Cordón Linarez, "cannot clear *Boumediene's* first hurdle—that of proving their entitlement *vel non* to the protections of the Suspension Clause." *Id.*

Cordón Linarez's entire argument is premised on his situation— that of an individual extradited from another country and paroled into the United States to face criminal prosecution and to serve a criminal sentence of incarceration—being legally distinguishable from that of an undocumented alien apprehended at or near the border. He characterizes himself as having "lawfully entered" or having been "lawfully paroled" into the United States, and having resided there for more than two years, and he argues that this distinguishes his status from that of the

petitioners *Thuraissigiam* and *Castro*, who had entered the United States illegally without papers, and who had been apprehended at or near the border shortly after crossing.

But, as discussed in the margin above, *see supra* note 4, such parole "amounts to permission . . . for ingress into the country but is not a formal 'admission.'" *Ngo v. I.N.S.*, 192 F.3d 390, 392 n.1 (3d Cir. 1999). Notwithstanding his physical presence within the United States for a period of years while serving his criminal sentence, as an immigration parolee, Cordón Linarez "now stands, although physically well within the United States border, on the same legal footing as an immigrant at the door seeking admission to the United States." *Soto-Ramirez v. Ashcroft*, 228 F. Supp. 2d 566, 569–70 (M.D. Pa. 2002). Moreover, "the Supreme Court has unequivocally concluded that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.'" *Castro*, 835 F.3d at 445 (quoting *Landon*, 459 U.S. at 32); *cf. Thuraissigiam*, 591 U.S. at 139 ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border.") (internal quotation marks

omitted); *id.* at 140 ("[A]n alien [applicant for admission] has only those rights regarding admission that Congress has provided by statute."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Nishimura v. United States*, 142 U.S. 651, 660 (1892) ("[As to] foreigners who have never . . . been admitted into the country pursuant to law, . . . the decisions of executive or administrative officers, acting within powers expressly conferred by congress, are due process of law.").

Based on the foregoing, we find this petitioner's status legally indistinguishable from that of the petitioners in *Thuraissigiam* and *Castro*—that of an alien seeking initial admission to the United States— and thus, Cordón Linarez is "unable to invoke the Suspension Clause," despite having been extradited to and paroled into the United States for criminal prosecution, and despite having been incarcerated for a period of years to serve a criminal sentence. *See Castro*, 835 F.3d at 448; *see also Thuraissigiam*, 591 U.S. at 120–27 (holding that the Suspension Clause does not guarantee a writ of habeas corpus that could be used to obtain "authorization for an alien to remain in a country other than his own or

to obtain administrative or judicial review leading to that result"). Therefore, we find this seventh objection to be meritless.

Following an independent review of the report and the record, and having afforded "reasoned consideration" to the uncontested portions of the report, *E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017), we are satisfied "that there is no clear error on the face of the record," Fed. R. Civ. P. 72(b) advisory committee note to 1983 amendment. As discussed above, we find Judge Carlson's analysis to be well-reasoned and fully supported by the record and applicable law, and we find Cordón Linarez's specific objections to be without merit. Accordingly, the court will adopt the report and recommendation in its entirety as the decision of the court, as supplemented by this memorandum opinion.

An appropriate order follows.


Dated: November 1, 2024          *s/Joseph F. Saporito, Jr.*
                                 JOSEPH F. SAPORITO, JR.
                                 United States District Judge